IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| ANGELA ENGLE HORNE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:16cv92 |
| | ) | |
| WTVR, LLC d/b/a CBS6 | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Angela Engle Horne ("Horne"), by counsel, state as follows as her Memorandum

In Opposition to the Motion to Dismiss filed by defendant WTVR, LLC d/b/a CBS ("WTVR").

**INTRODUCTION**

WTVR's motion is an entirely misplaced effort. First and foremost, resting mostly on lofty

platitudes, WTVR wrongly seeks to downplay its inappropriate connection between its statements

about Horne's prior felony and its implied, but clear, accusation that she committed a *separate*

crime by failing to disclose her felony when she applied for her position with the Prince George

County School Board. While the various factual statements in the news story may be *technically*

true, they have been intentionally arrayed and organized by WTVR in such a manner that a

reasonable person could reach the *false* conclusion that Horne, a convicted felon, committed

*further* criminal conduct to hide her prior conviction from the School System.  In other words,

Horne used illegal subterfuge to obtain her job with the School System. This is a classic "libel by

implication" situation, and this defamation theory has been recognized by the Supreme Court of

Virginia since its seminal 1954 decision in *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588

(Va. 1954).  Curiously, *Carwile* is **nowhere** mentioned in WTVR's brief.

WTVR also distracts the Court with pages upon pages about a doctrine – the fair report doctrine -- that has nothing to do with this case.  This is a complete red herring.  First, as a matter of pure fact, the doctrine is inapplicable on its face because Horne is **_not_** claiming that Browder's statements to WTVR are false and that WTVR, in turn, republished his false statements.  Rather, she is saying that WTVR put Browder's true words into a larger context – and, indeed, raised *on its own* the fact that making misrepresentations about one's criminal past is a Class 1 Misdemeanor – so as to convey a false message about her.  This is libel by implication.

Separately, even if Horne were somehow claiming (which she is not) that WTVR published *Browder's* false statements about her (not its own), the fair report doctrine *still* would not apply.  As explained herein, the doctrine only applies to "official proceedings" such as "court records and government actions."  *Ramey v. Kingsport Publ'g Corp.*, 905 F. Supp. 355, 358 (W.D. Va. 1995).  Here, however, no "official proceedings," "court records," or "government actions" exist.  WTRV did **_not_**, for example, publish a story which summarized a criminal indictment or an arrest report.  Instead, it published verbal comments from a local school superintendent about the School System's *internal* hiring procedures and its general application process. Nothing about those topics required reliance upon, or an examination or review of, any "official" records, and nothing about Browder, the local school superintendent, gave him any special indicia of reliability or credibility merely because he worked for the local public school system.  Indeed, WTVR's strained effort, based on foreign case law, to stretch Virginia's narrow version of the fair report doctrine to cover the unofficial statements of a non-law enforcement governmental employee is contrary to long-standing Virginia precedent.  As Virginia has long-held, "[t]he correctness of . . . information" from a spokesperson (as opposed to a record) is "a _risk_ _assumed_" by media companies.  *Norfolk Post Corp. v. Wright*, 125 S.E. 656, 675 (Va. 1924) (emphasis added).

Finally, WTVR wrongly seeks to impose a heightened burden of proof on Horne for her implied defamation claim. This is contrary to Virginia law, as the Supreme Court of Virginia expressly eschewed such a burden *just last year*. Indeed, the very case upon which WTVR relies to escape liability for its defamatory news story, *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), was specifically distinguished by the Supreme Court in its most recent – and binding – precedent, *Pendleton v. Newsome*, 772 S.E.2d 759 (Va. 2015), involving libel-by-implication claims. *Pendleton*, not *Chapin*, governs this Court's analysis of Horne's claim, and it does not require that Horne, especially at the motion to dismiss stage, make a "rigorous showing" of WTVR's intent about its news story in order for her to state a valid claim for defamation. Such intent is a question of fact for the jury.

At bottom, WTVR is seeking to dismiss a claim Horne is not bringing. Horne is not saying Browder *himself* made false statements about her, and she is not saying that WTVR inaccurately summarized any official governmental proceedings. Rather, in a very straightforward manner, Horne is saying that WTVR intentionally organized its news story – for maximum viewer attention – in such a way that it implicitly, but falsely, accused her of criminal misconduct. This is a sound legal theory in Virginia and, thus, WTVR's motion must be denied in its entirety.

### OBJECTION TO WTVR'S "STATEMENT OF FACTS"

As a threshold matter, Horne is compelled to object to WTVR's self-serving description of the facts in the Complaint. Most notably, WTVR conveniently omits virtually all of the damning context that is integrally connected with its seemingly neutral statements about the application process for employment at Prince George County Public Schools.  For example, _nowhere_ in its "Statement of Facts" does WTVR mention that it had continuous banners scrolling at the bottom of the screen during its story which said: "Felon Hired, Then Fired" and "How Prince George

County Prevents This."  Complaint, ¶ 34. Nor does WTVR mention in its brief that it *opened* its 5:30 p.m. news broadcast – with the story about Horne as the *lead* story – with the words: "Now, at 5:30, **Hired And Then Fired**." *Id.* at ¶ 35. In fact, quite to the contrary, in its brief, WTVR gives the misleading impression that the very first words out of its anchor's mouth in its broadcast were "a CBS6 viewer reached out to us concerned about a felon working for a local school system." Def. Br. at 3. Obviously, this is not true, and the omitted facts are important in providing the complete context for the defamatory story.

Just as significant, WTVR's brief improperly downplays how it weaved the narrative about Horne's prior felony conviction into a full story about how persons who lie to the school system about their prior criminal past are guilty of misdemeanor criminal behavior. The Complaint clearly outlines this connectivity and it need not be repeated here.  *See, ¶¶* 34-39. It suffices to say simply that the allegations in the Complaint far more accurately capture the tone and meaning of the video version of the story,[1] and that the sanitized version of the story that WTVR paints in its brief is an incomplete and misleading description of the broadcast.[2]

---

[1] WTVR has submitted a video version of the news story to the Court.  Horne has no objection to the video's inclusion as part of the record for purposes of WTVR's motion, and, indeed, she invites the Court to watch the video as it evaluates the merits of the parties' arguments on the motion. Horne, however, cautions that her defamation claim rests not only on the television video version, but also on the on-line version of the story – which, even to this day, remains on the WTVR website – combined with the written copy of the story that is also included on the WTVR's website. *See* http://wtvr.com/2015/02/13/sources-convicted-felon-worked-at-school-board-office-in-central-va/ (viewed on April 5, 2016).

[2] Notably, WTVR summarizes its news story with the following defense-friendly description: "In short, the broadcast identified an important public issue, specifically stated that the school system could not and was not talking about a specific individually, and accurately reported the summary of the hiring process by putting the superintendent on air." Def. Br. at 3-4.  If indeed that was *all* that WTVR had said in its news story, we would not be here before the Court today.

### STANDARD OF REVIEW

As the Fourth Circuit has made clear, the "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-244 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In examining sufficiency, a federal court starts with Federal Rule 8(a)(2). According to the Rule, all a complaint is required to contain is a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2).  "This is not meant to be an onerous burden." *Law v. Autozone Stores, Inc.*, 2009 U.S. Dist. LEXIS 110445 at *6 (W.D. Va. Nov. 25, 2009).  Rather, this standard is the hallmark of "Notice Pleading" under the Federal Rules, and its purpose is simply "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  Indeed, under notice pleading standards, this Court must accept all well-pleaded facts in the complaint as true and must construe all reasonable inference arising therefrom in favor of the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

In recent years, the U.S. Supreme Court has refined the Rule 12(b)(6) pleading standard.  *See Twombly, supra* and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). It now focuses on "plausibility," and it is satisfied if the complaint contains "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Even so, this standard does not require "detailed factual allegations." *Twombly*, 550 U.S. at 555. It does not, for example, "require that a complaint meet the burden of proof required for summary judgment" nor does it require a complaint "to allege **all** the facts that could permit the plaintiff to obtain relief." *Trail v. General Dynamics Armament & Tech. Prods.*, 697 F. Supp.2d 654, 657 (W.D. Va. 2010) (emphasis added).  Indeed, the

plaintiff does not even "have to show that [he] is likely to obtain relief" in order to satisfy this standard. *Power Mktg. Direct v. Int'l Bedding Corp.*, 2008 U.S. Dist. LEXIS 51901 at *5 (E.D.Va. 2008). Instead, "if the complaint alleges -- directly or indirectly -- each of the elements of 'some viable legal theory,' the plaintiff should be given the opportunity to prove that claim." *Id.*

**ARGUMENT**

**DEFENDANT'S MOTION TO DISMISS MUST BE DENIED IN ITS ENTIRETY**

## I.    GENERAL PRINCIPLES FOR DEFAMATION CLAIMS UNDER VIRGINIA LAW[3]

Well-settled principles govern Horne's defamation claim. "Historically, a cause of action for defamation has been viewed as the means to protect a basic right because 'the individual's right to personal security includes his uninterrupted entitlement to enjoyment of his reputation.'" *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 449 (Va. 2007) (quoting *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005)). Protecting one's good name also often requires compensation, because while "defamation actions cannot fully rehabilitate individual dignity; . . . 'the jingle of the guinea helps the hurt that Honor feels.'" *Freedlander v. Edens Broadcasting, Inc.*, 734 F. Supp. 221, 224 (E.D. Va. 1990) (*citing* Lord Alfred Tennyson, *Locksley Hall*, 1.105 (1842)). As Benjamin Franklin once said, 'Glass, China, and Reputation, are easily crack'd, and never well mended." *Pages v. Feingold*, 928 F. Supp. 148, 154 (D.P.R. 1996).

To prevail on a defamation claim in Virginia, a plaintiff must prove "a publication of false information concerning the plaintiff that tends to defame the plaintiff's reputation." *Hatfill v. New York Times Co.*, 416 F.3d 320, 330 (4th Cir. 2005) (relying on *The Gazette, Inc. v. Harris*, 325 S.E.2d 713 (1985)). This breaks down into three elements: "(1) publication of (2) an actionable

---

[3] Because this case is before this Court on diversity jurisdiction (28 U.S.C. § 1332), Virginia law applies to Horne's claim. *See, e.g., Jarrell v. Kroger Ltd. P'ship*, 33 F. Supp.2d 645, 649 (E.D.Va. 2014).

statement with; (3) the requisite intent." *Chapin v. Knight Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). "To be 'actionable,' the statement must not only be false, but also defamatory, that is, it must tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin*, 993 F.2d at 1092. However, "[o]n a motion to dismiss a libel suit because of no actionable statement, the [trial] court must . . . credit the plaintiff's allegation of the factual falsity of a statement." *Id.* Applying these principles to the Complaint, Horne, despite the arguments raised by WTVR, has easily alleged a plausible claim for defamation.

II.   **THE COMPLAINT STATES A PLAUSIBLE CLAIM FOR DEFAMATION**

   A.   **Virginia Recognizes Libel-By-Implication Claims Such As That Raised Here By Horne**

In Virginia, a defamatory charge need not be express or direct to be actionable. *Carwile v. Richmond Newspapers*, 82 S.E.2d 588, 592 (Va. 1954). *Id.* Instead, it may be made "***by inference, implication, or insinuation***." *Id* (emphasis added). As the Supreme Court of Virginia stated more than sixty years ago, "it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory." *Id.*

"Where, as here, a plaintiff alleges that [she] has been defamed not by statements of fact that are literally true but by an implication arising from them, the alleged implication must be reasonably drawn from the words actually used." *Webb v. Virginian-Pilot Media Co., LLC*, 752 S.E.2d 808, 811 (Va. 2014). When examining the implications that arise from the words used, a court looks at their "plain and natural meaning" as "other people would understand them, and according to the sense in which they appear to have been used." *Carwile*, 82 S.E.2d at 592. They must also "considered as a whole." *Hyland v. Raytheon Sevs. Tech. Co.*, 670 S.E.2d 746, 751 (Va. 2009) (emphasis added). And finally, "[i]n determining whether the words and statements

complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor." *Carwile*, 82 S.E.2d at 591-592.

**B.     This Case Is Exactly Like *Carwile* And Just Like The Plaintiff Did In *Carwile*, Horne Here States A Plausible Claim For Defamation**

Here, applying the above principles, Horne states a claim for libel by implication.  The case of *Carwile v. Richmond Newspapers*, 82 S.E.2d 588 (Va. 1954) is directly on point.  In that case, a Richmond attorney sued the local newspaper after it published an article about him.  The article truthfully stated how an investigation of alleged graft and corruption in the city's police department that had been championed by the attorney at issue had uncovered no wrongdoing by any officials. It then interviewed some of the city officials to ask whether they might bring bar complaints against the attorney. After a sentence where a city official specifically declined to say whether he would or would not bring bar charges, the article truthfully stated:

> Under the State Code, the State Bar as an administrative agency of the Supreme Court of Appeals may request a court of competent jurisdiction to disbar an attorney for violation of the ethical code governing the professional conduct of attorneys.

*Id.* at 589-590. The attorney sued for defamation, but the trial court granted summary judgment against him, concluding that the article was literally true.

The Supreme Court of Virginia reversed.  Agreeing with the attorney, the Court held that the language of the article was capable of defamatory meaning.  It explained:

> it is a reasonable implication of this language, read in connection with the whole article, that the plaintiff is guilty of unethical and unprofessional conduct for his charges made against the Police Department; for which conduct the defendant suggests in a ***veiled but pointed way*** that the plaintiff could and should be subjected to disbarment proceedings under Code, § 54-74, et seq. While the defamatory language does not in express terms charge the plaintiff with a breach of his professional honor, ***yet, when aided by the innuendo, operating within the scope of its legitimate functions, it does impute conduct tending to injure him in his profession.***

*Id.* at 592.

So too here.  Like the article in *Carwile,* WTVR's news story about Horne "in a veiled but pointed way" suggested that she was guilty of a Class 1 misdemeanor for misrepresenting the fact she was a convicted felon when she initially applied for her job at the School System.  While this accusation is not stated in express terms, the entirely of the story (including the narrative that, in a very specific order, intentionally (i) laid out the fact that a felon had recently been hired and then fired by the School System; (ii) talked about the fact that the initial application asked if the applicant had ever been convicted of a crime, (iii) talked about the background check process, (iv) explained that the person would start employment even as the background check was proceeding, (v) explained how the background check could reveal "disqualifying" information, and (vi) then pointedly and specifically explained that making a misrepresentation about one's criminal past in a school application is a Class 1 misdemeanor), when aided by innuendo, leaves no doubt that the story falsely accused Horne of criminal conduct.[4]  As such, like the attorney/plaintiff in *Carwile*, Horne here has stated a plausible claim for defamation by implication.[5]

---

[4] In its brief, WTVR appears to minimize Horne's inclusion in the story, saying that she was only mentioned briefly at the beginning of the story.  WTVR, however, has **_not_** challenged the fact that the story was "of and concerning" Horne and, indeed, even the limited and general references to Horne in the story were clear enough to cause Horne's friends and acquaintances to believe that the story had accused her of committing a crime when applying for her job at the School System.

[5] Although *Carwile* is perhaps the most on point example of Virginia precedent which supports Horne's claim, ample additional authority shows that courts applying Virginia law routinely recognize defamation by implication claims such as Horne's.  *See, e.g., Hatfill v. New York Times Co.*, 416 F.3d 320, 332-333 (4th Cir. 2005) (applying *Carwile* and concluding that columns by the New York Times about the anthrax mailings would lead "a reasonable reader . . . [to] conclude that Hatfill was responsible for the anthrax mailings in 2001."); *Schnupp v. Smith*, 457 S.E2d. 42, 45-47 (Va. 1995) (holding that defendant's statements, while not charging the plaintiff in express terms, did impute to the plaintiff the commission of the crime of aiding and abetting in the possession of narcotics); *Hatten v. Campbell*, 71 Va. Cir. 95 (Chesterfield County Cir. Ct. 2006) (applying *Carwile* and concluding that while a letter did not express charge the plaintiff with breach of her professional obligations, when aided by innuendo and taken in the light most

III.   **THE FAIR REPORT PRIVILEGE HAS NO RELEVANCE TO HORNE'S CLAIM**

  A.   **The Allegations Of The Complaint Do Not Accuse WTVR Of Making Any False Statements About Horne That Would Be Subject To The Fair Report Privilege**

Next, as a complete red herring, WTVR spills much in on the "fair report privilege" and, relatedly, how it is not responsible for any negative inferences about Horne that were created by the "failure of the superintendent [Browder] to provide information he said the law legally prevented him from providing." Def. Br. at 5. This is a complete misunderstanding of Horne's claim. Horne is not in any way contending that the WTVR news story is false because Browder hid key information about her during his interview or that he somehow mislead WTVR by omitting critical details about how she was hired by the School System.[6] Importantly, Browder did not say anything in the story about Horne making misrepresentations to the School System about her prior felony conviction or whether such misrepresentations constituted a Class 1 misdemeanor. WTVR did that all on its own. As such, while Browder's interview helps lay the necessary factual context for WTVR's false innuendo, it does not, by itself, create any false negative criminal inferences about Horne.[7]

---

favorable to the plaintiff, some portions of the letter may constitute defamation). *See also Tomblin v. WHCS-TV8*, 2011 U.S. App. LEXIS 9752 at *12 (4th Cir. May 11, 2011) (reversing summary judgment against plaintiff and holding, that an article about abuse at a day care center "produced a false 'implication, innuendo or insinuation' about the daycare.") (applying West Virginia law).

[6] To be sure, Browder *did* leave out such details. But Browder's omissions are not why the news story at issue here is defamatory.

[7] It must also be clarified that WTVR appears, at times, to be conflating the "fair comment" privilege with the "fair reporting privilege" The "fair comment" privilege applies primarily to letters to the editor or opinions – i.e., where a newspaper expresses an opinion about a public event -- and has even less application to this case that the fair reporting privilege. Horne does not believe that WTVR is actually intending to invoke the fair comment privilege and, instead, is seeking solely to invoke the fair reporting privilege, which protects media reports of official government proceedings.

**B.      The Fair Report Privilege In Virginia Does _NOT_ Substantively Apply To Any Comments By Browder**

Next, even if Horne were contending (and she is not) that WTVR falsely reported something that Browder said about her, WTVR still would receive no protection from the fair report privilege.

**1.      Browder Did Not Make Any Comments About Any Official Proceedings, Court Records or Government Actions**

First and foremost, at the most basic threshold level, the privilege simply does not apply to the types of comments made by Browder or the events he was discussing.  Under Virginia law, the privilege is limited to "official proceedings" such as "court records and government actions." *Ramey v. Kingsport Publ'g Corp.*, 905 F. Supp. 355, 358 (W.D. Va. 1995).[8]  It has nothing to do with comments about a termination of a school employee.  While Horne's prior felony conviction is a matter of public record and could indeed be subject to this privilege, Browder's comments about the hiring process at the School System and his statement that having a felony would be a "disqualifying" factor in terms of employment have nothing to do with official proceedings, records, or actions.  Indeed, while WTVR goes to great lengths to cite and discuss case law from numerous foreign jurisdictions (including Texas, Missouri, North Carolina, Idaho, Colorado, New York, Florida, Maryland, Massachusetts, the Eighth Circuit, and federal courts in Pennsylvania

---

[8] According to the Restatement (Second) of Torts: "The publication of defamatory matter concerning another **_in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged_** if the report is accurate and complete or a fair abridgement of the occurrence reported." RESTATEMENT (SECOND) OF TORTS, § 611, Report of Official Proceeding or Public Meeting. (emphasis added). *See also* Comment e. to § 611 ("Necessity of official action in judicial proceedings.  A report of a judicial proceeding implies that some official action has been taken by the officer or body whose proceedings are thus reported.").

and Mississippi), it fails to cite even *one* Virginia case where a court so broadly construed the fair report doctrine that it applied to non-official proceedings.[9]

> ### 2.     Even If The Subject Matter Of Browder's Comments Is Covered By The Fair Report Privilege, The Actual Comments Are *Not*

Second, even if the subject matter of Browder's comments is somehow covered by the fair report privilege, the actual comments he made are not. This is because in Virginia, _unlike_ in other jurisdictions, the fair report privilege does _NOT_ include reports by government or law enforcement officials. While Defendant cites a veritable cornucopia of _non_-Virginia cases to try to transform Virginia's jurisprudence into something it is not, it cannot overcome Virginia's settled, controlling, and binding precedent on this issue.

We begin with this precedent. Most importantly, in *Wright*, *supra*, a newspaper reporter mistakenly identified the plaintiff as the man suspected in the "Colonial Place robberies" in Norfolk, when, in fact, he was not. The reporter tried to defend his mistake by saying he was just "accurately stat[ing] the information the detective gave him." 125 S.E. at 657. The Supreme Court of Virginia rejected this argument, saying that "[t]he correctness of this information was a _risk assumed_." *Id.* (emphasis added). The Court explained:

> The character of the charge was a matter of public record and had the reporter seen fit to examine it _rather than to rely upon the statement of the detectives_ this litigation could never have arisen.

125 S.E. at 657 (emphasis added).

---

[9] In this regard, WTVR is wholly mistaken when it tries to compare news stories about arrests and news stories about the termination of governmental employees. WTVR devotes almost an entire page to this comparison, but it noticeably lacks *any*, let alone Virginia, legal authority for its proposition. As explained herein, Virginia law will not bear the weight of the comparison that WTVR seeks to place upon it. Indeed, if WTVR's position was actually correct, then one would have expected the Chesterfield County governmental officials in *Pendleton* to have invoked, and to have been protected by, the fair report privilege. Yet they were not.

This rule of law was affirmed just three years later in *Times-Dispatch Publishing Co. v. Zoll*, 148 Va. 850, 139 S.E. 505 (1927) There, Charles Zoll, the then-Mayor of Fairfax was questioned by police after they found liquor in his barn. 139 S.E.2d at 505.  He went to court for a hearing and proceedings against him were continued until a later date. *Id.*  He was never arrested in connection with the discovery of liquor.  *Id.* at 506.  The prohibition officer who completed a "daily report" on the matter, however, wrongly stated that Zoll had actually been arrested.  *Id.* at 506.  The report was then made available to reporters and the Richmond Times-Dispatch published a report stating that the "mayor of Fairfax" had been "arrested with three others on charge of storing ardent spirits."  *Id.*  Zoll sued the newspaper for defamation and won a jury verdict in his favor.  *Id.*

On appeal, the Supreme Court expressly rejected the notion that the police officer's "daily report" was privileged for purposes of Zoll's defamation claim.  After discussing the general parameters of the "fair report privilege" and noting its general application to "judicial proceedings," the Court explained that such privilege does *not* apply to statements that go beyond the actual public record itself.  As it stated:

> A newspaper in publishing the proceedings of a trial where the information is gotten from a source *other than the record itself*, must carry the burden of showing that the information published is the same as that disclosed by the record, and *assume the risk of its correctness*

*Id.* at 858-859; 139 S.E. at 507 (emphasis added).  In other words, an official "record" of judicial action, such as the text of an indictment, is protected as privileged, but statements from police officials about the record are not.

Other courts in Virginia have followed *Wright* and/or *Zoll*. For example, in *James v. Powell*, 152 S.E. 539 (Va. 1930), where a reporter erroneously said that the plaintiff was charged with both murder *and* robbery when in fact he had only been charged with murder, the Supreme

Court rejected any notion that the reporter could defend his incorrect description of the indictment as being based on information from police sources. It stated: "the reporter could have read the indictment. This he appears not to have done and for his error his paper . . . must pay." *James*, 152 S.E. at 545. Similarly, in *Mills v. Kingsport Times-News*, 475 F. Supp. 1005 (W.D. Va. 1979), where a reporter erroneously reported that the plaintiff had been committed to a mental institution for a psychiatric examination, Judge Glen Williams of the Western District of Virginia, relying on *Zoll*, explained as follows as to the scope of the fair report privilege under Virginia law:

> If the information is contained in public records and derived from therein, there is an absolute privilege to publish. If, however, *material is received from other than the public record, then the defendant newspaper assumes the risk that the information is incorrect*.

*Mills*, 475 F. Supp. at 1011 (emphasis added).[10]

These "risk assumed" sentiments also are consistent with how the fair report privilege is articulated by the Restatement (Second) of Torts. According to comment "h", titled "Arrest," of section 611 of the Restatement, which is the main section dealing with the "fair report" or "fair comment" privilege:

---

[10] Judge Williams' statement of the law in *Mills* is not at all inconsistent with, or undermined by, his later holding and legal analysis in the subsequent case of *Ramey v. Kingsport Publishing Corp.*, 905 F. Supp. 355 (W.D. Va. 1995). There, Judge Williams unremarkably (and correctly) explained that "the fair report doctrine applies to press accounts of such official proceedings as court records and government actions." *Id.* at 358-359. He then proceeded to apply the privilege to a newspaper's story which summarized an *official police* affidavit that was *filed* in the Wise County Circuit Court in support of a search warrant. *Id.* By contrast, Judge Williams refused to hold – although the issue was squarely before the Court – that statements from the Wise County Commonwealth's Attorney that were published by the paper were also protected by the fair report privilege. *Id.* at 359. Instead, he ruled that such statements were nonlibelous as a matter of law because they did not make the plaintiff appear "odious, infamous, or ridiculous." *Id.* Such a ruling, then, is entirely consistent with the notion, advanced here by Horne, that the fair report privilege only applies to the actual records related to her prior felony conviction and not to any of Browder's statements simply related to the hiring process or background check process for employees at the Prince George County Public Schools.

> An arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege covered by this section.  On the other hand, _statements made by the police_ or by the complainant or other witnesses _or by the prosecuting attorney_ as to the facts of the case or the evidence expected to be given are not yet part of the judicial proceeding or of the arrest itself and are not privileged under this Section.

RESTATEMENT (SECOND) OF TORTS, § 611, comment h (emphasis added).

Applying this law and these principles here, any statements by Browder about Horne are not "official actions" protected by the fair report privilege.  They are neither verbatim statements about a judicial or official document nor are they statements about any judicial proceedings that relate to Horne.  As such, they are not shielded by the fair report privilege (at least in Virginia) and thus _are_ a proper basis upon which to base a defamation claim.

### C.      A Narrow Version Of The Fair Report Privilege Is In Keeping With The Entire Public Policy Purpose Behind The Privilege

Virginia's narrow version of the fair report privilege also is in keeping with the entire public policy purpose behind the fair report privilege.  As is well recognized:

> The privilege rests upon the idea that any member of the public, if he were present, might see and hear for himself, so that the reporter is merely a substitute for the public eye -- this, together with the obvious public interest in having public affairs made known to all.

PROSSER & KEETON, Torts (5th ed. 1984), § 115, p 836.  In other words, the privilege simply allows a reporter to be a conduit between an "official" public document or public event and the public.  Virginia's narrow version of the report (which does not allow government officials to serve as some sort of "expert" intermediaries in between a public document or a public event and the reporter) serves precisely this purpose.

**D.** **Even If The Fair Report Privilege Applies On Its Face To Browder's Comments, A Question Of Fact Exists As To Whether WTVR's News Story Is Actually Fair And Accurate**

As a final matter, even if the fair report privilege somehow applies to both the subject matter of Browder's statements and the statements themselves, it would still be inappropriate to grant WTVR's motion to dismiss on this point. This is because there is still as question of fact as to whether WTVR's report is an accurate and fair recitation of Browder's comments. Specifically, under comment f. to § 611 of the Second Restatement of Torts, for the privilege to apply:

> . . . it is necessary that nothing be omitted or ___*misplaced in such a manner as to convey an erroneous impression to those who hear or read it*___, as for example a report of the discreditable testimony in a judicial proceeding and a failure to publish the exculpatory evidence, or the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article. The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.

RESTATEMENT (SECOND) OF TORTS, § 611, comment f (emphasis added). Here, WTVR's addition of the language about the fact that misrepresentations about one's criminal past when applying to work at a public school are Class 1 misdemeanors, coupled with Browder's comments about the hiring process, raise serious questions, especially when construed favorably to Horne at the motion to dismiss stage, as to whether WTVR's report was fair and accurate. As such, even if everything WTVR says about the general application of the fair report privilege under Virginia law to the facts of this case is true (and it is not), this Court still cannot grant its motion to dismiss based on this ground. *See, e.g., Banka v. Columbia Broadcasting Co.*, 63 F. Supp.3d 501, 509 (E.D. Pa. 2014) ("In this case, while the May 1 Report is a privileged occasion because it is for the most part focused on a state court malpractice case filed against Dr. Banka, it is possible that some statements in both the Internet article and televised report constituted an abuse of that privilege. This Court cannot decide at this stage if CBS 3 has forfeited such privilege.").

IV.   **AT THE MOTION TO DISMISS STAGE, HORNE NEED NOT MAKE A RIGOROUS SHOWING OF A SPECIFIC INTENT BY WTVR TO CREATE ITS FALSE INNUENDO ABOUT HER**

As its final argument in support of dismissal, WTVR, discussing *Pendleton v. Newsome*, 772 S.E.2d 759 (Va. 2015) and *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), suggests that the Complaint must be dismissed because it fails to allege that WTVR "intended to establish an innuendo it knew to be false."  Def. Br. at 18. This argument fails, however, because it seeks to impose far too heavy a burden on Horne at the motion to dismiss stage.  Specifically, although raised as a case that seemingly supports dismissal[11], *Pendleton* actually expressly rejects the notion that a plaintiff, at the motion to dismiss stage, must make a rigorous showing of the defendant's intent to create its false innuendo about the plaintiff.  As the Court there stated:

> Our decisions in defamation cases do not include a requirement that "a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true." The plaintiff's burden is proof by a preponderance of the evidence. *Food Lion, Inc. v. Melton*, 250 Va. 144, 150, 458 S.E.2d 580, 584 (1995). Nor have we held that the defendant's words must, by themselves, suggest that the author intends or endorses the allegedly defamatory inference. Such a holding would immunize one who intentionally defames another by a careful choice of words to ensure that they state no falsehoods if read out of context but convey a defamatory innuendo in the circumstances in which they were uttered. Motive, intent, scheme, plan or design are issues of fact that may be proved by circumstantial evidence as well as by direct evidence. *See Banovitch v. Commonwealth,* 196 Va. 210, 216, 83 S.E.2d 369, 373 (1954) ("The specific intent may, like any other fact, be shown by circumstances.")

---

[11] Oddly, WTVR uses its discussion of the facts in *Pendleton* to suggest its actions here were similar to the "responsible news organizations" discussed in that case.  No such comparison is warranted, either legally or factually.  In the first place, there is absolutely no ruling or holding in *Pendleton* that would somehow give greater protection to media defendants than non-media defendants in a libel-by-implication case.  In the second place, WTVR's actions here are nothing like the actions of the news organizations in *Pendleton*.  Unlike those organizations, WTVR here *added* statements and information (especially its statement about misrepresentations being a Class 1 misdemeanor) that went far beyond the basic information provided by the government official

*Pendleton*, 772 S.E.2d at 764-65.   Indeed, in articulating this rule of law for libel-by-implication claims, the Virginia Supreme Court specifically distinguished its rule with the rule of law applied by the Fourth Circuit in *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993).   As such, all libel-by-implication claims arising under Virginia law are now governed by *Pendleton*, not *Chapin*, and the prior rule of law stated in *Chapin* (which was decided under Virginia law) has been expressly abrogated and superseded by the Virginia Supreme Court.[12]

In its brief, WTVR misapplies these principles so as to try to use them as a sword against Horne, even though they were intended to be used shield *by* her.   As is clear from the Virginia Supreme Court's discussion of these principles in *Pendleton*, it was *not* – as suggested by WTVR – imposing a high burden on a libel-by-implication plaintiff to prove intent at the motion to dismiss stage.   Rather, it was specifically *rejecting* such a high burden and, instead, telling the trial courts in Virginia that such matters should be decided at trial.   As the Supreme Court said soon after articulating its analysis of a defendants' intent in such cases:

> **_At trial,_** the plaintiff will bear the burden of proving, by a preponderance of the evidence: (1) that the defendants made the statements alleged in the complaint, (2) that the statements, even if facially true, were designed and intended by the defendants to imply that the plaintiff was responsible for the death of her child, (3) that in the light of the circumstances prevailing at the time they were made, the statements conveyed that defamatory implication to those who heard or read them, and (4) that the plaintiff suffered harm as a result.

---

[12] If for any reason, this Court has questions about whether *Pendleton* has superseded *Chapin* as to this rule of law, it should certify the matter to the Supreme Court of Virginia.   *See* Va. Sup. Ct. R. 5:40.

*Pendleton*, 772 S.E.2d at 765 (emphasis added).  In short, the issues of intent raised by WTVR are questions of fact for a jury, not questions of law relating to the sufficiency of the pleadings at the motion to dismiss stage.[13]

## CONCLUSION

In conclusion, for all of the reasons stated herein, Defendant's Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

ANGELA ENGLE HORNE

By:     s/ Richard F. Hawkins, III
        Virginia Bar Number: 40666
        THE HAWKINS LAW FIRM, PC
        2222 Monument Avenue
        Richmond, Virginia 23220
        (804) 308-3040 (telephone)
        (804) 308-3132 (facsimile)
        Email: rhawkins@thehawkinslawfirm.net
        Counsel for Plaintiffs

---

[13] As a final matter, WTVR's discussion of *Chapin* does nothing to support dismissal.  *Chapin*, of course, is first and foremost inapposite because it relied on a now superseded "rigorous showing" analysis that the Supreme Court of Virginia rejected in *Pendleton*.  Second and just as important, the rhetorical device at issue in *Chapin* is not comparable to the very specific reference to criminal conduct raised by WTVR here.  Indeed, the Fourth Circuit clearly was concerned that the rhetorical questions at issue there could not be translated into false statements or false innuendos because there were more than one answer to the questions that were raised.  Here, however, there is *one* conclusion that can be reached by WTVR's intentional and affirmative reference to the criminal penalty associated with making misrepresentations in a public school application. Finally, unlike the defendant in *Chapin*, WTVR cannot be said to have been "provok[ing] public scrutiny" with its news story.  Instead, it was making a specific – albeit implied – accusation that Horne engaged in criminal conduct.

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF systems which will send notification of such filing to the following to:

Conrad M. Shumadine
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
(757) 628-5525 (direct dial)
(757) 628-5566 (facsimile)
cshumadine@wilsav.com

    Counsel for Defendant

                            s/ Richard F. Hawkins, III
                            Virginia Bar Number: 40666
                            THE HAWKINS LAW FIRM, PC
                            2222 Monument Avenue
                            Richmond, Virginia 23220
                            (804) 308-3040 (telephone)
                            (804) 308-3132 (facsimile)
                            Email: rhawkins@thehawkinslawfirm.net

                            Counsel for Plaintiff