IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

ANGELA ENGLE HORNE,

    Plaintiff,

v.                                                           Civil Action No. 3:16cv92

WTVR, LLC, d/b/a CBS 6,

    Defendant.

## BENCH BRIEF ON ACTUAL MALICE

The standard of fault in defamation actions depends on the status of the plaintiff. As a general rule, private plaintiffs must prove by a mere preponderance of the evidence that the defendant negligently published a false and defamatory factual statement – an objective analysis based on a reasonable person standard. A "public official" or "public figure," on the other hand, must prove by clear and convincing evidence that the defendant made the statement with constitutional "actual malice" – a subjective standard that requires proof that the defendant knew the statement was false or had a high degree of awareness of its probable falsity. In simple terms, establishing actual malice requires clear and convincing proof that the defendant was "deliberately lying" or was engaged in conduct approaching "the level of publishing a knowing, calculated falsehood." Ryan v. Brooks, 634 F.2d 726, 733 (4th Cir. 1980).

The United States Supreme Court first recognized the distinction between public and private plaintiffs, and the differing standards of proof that apply to each, in the landmark decision New York Times v. Sullivan, 376 U.S. 254 (1964). Explaining the need for open and robust debate and discussion of public issues, the Court stated:

> The First Amendment, said Judge Learned Hand, "presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be,

folly; but we have staked upon it our all." *United States v. Associated Press*, 52 F. Supp. 362, 372 (D.C.S. D.N.Y. 1943). Mr. Justice Brandeis, in his concurring opinion in *Whitney v. California*, 274 U.S. 357, 375-376, gave the principle its classic formulation:

"Those who won our independence believed . . . that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones. Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law — the argument of force in its worst form. Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech and assembly should be guaranteed."

Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.

Id. at 270.

As will be explained in further detail below, the Supreme Court's choice of the term "actual malice" to describe subjective knowledge of falsity was unfortunate. Constitutional actual malice has nothing to do with spite, ill-will, or any of the other motives descriptive of common law "malice," which (also unfortunately) is sometimes referred to as actual malice. The term also does not include recklessness in the ordinary sense of gross negligence or an extreme departure from accepted standards. Constitutional malice is a purely subjective measure of what the defendant actually thought. See Reuber v. Food Chem. News, Inc., 925 F.2d 703, 714 (4th Cir. 1991) ("Actual malice is a subjective standard"). Accordingly, proof of negligence (e.g., failure to exercise care), spite/ill-will, or recklessness in the ordinary sense of gross negligence does not establish constitutional actual malice as a matter of law.

Here, Plaintiff's evidence of alleged actual malice comes down to one issue – the reporter

2

1-1469423.1

did not talk with Plaintiff or others in the school administration before publishing Superintendent Browder's description of the school system's hiring process. Plaintiff has no evidence of any kind, however, that the reporter knew anything in the story was false or had a "high degree of awareness" that anything was probably false. Absent that evidence, Plaintiff cannot recover.

## I. Overview of Constitutional Actual Malice and Common Misperceptions

To establish actual malice, a plaintiff must show that a defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." Sullivan, 376 U.S. at 279-80. Reckless disregard of whether a statement is false is different from the ordinary tort measure of recklessness, which is based on an objective standard. In the context of defamation, reckless disregard means that, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication and that the defendant actually had a high degree of awareness of probable falsity." Jordan v. Kollman, 269 Va. 569, 580 (2005) (internal citation omitted).

The Supreme Court's use of the words "malice" and "reckless" initially created confusion over the actual malice standard as they implied concepts of spite, ill-will, and gross negligence, which have nothing to do with a defendant's subjective belief about the accuracy of his statements. A person can despise the subject of his comments and intend to hurt that individual's reputation, but nevertheless believe what he is saying. Indeed, the Fourth Circuit has, at times, used the term "constitutional malice" instead of "actual malice" precisely because of the inherent confusion and utter irrelevance of common law malice in public official/public figure cases. See Ryan v. Brooks, 634 F.2d 726, 731 n.4 (4th Cir. 1980) ("We use this term to differentiate between the 'actual malice' defined in New York Times as the knowing or reckless publishing of a falsehood, and the 'actual malice' frequently required in other claims involving punitive damages and defined as malevolence, ill-will or spite. The latter is irrelevant in First

3

Amendment cases, where the concern is to protect speech, however motivated, unless it is a calculated falsehood and therefore of no value to society."). Similarly, a person can make a statement without any investigation and nevertheless believe that what he or she is saying is true. These and related common misperceptions are discussed below.

    A.    <u>Common Law Malice is Not Proof of Actual Malice</u>

Although sometimes mistakenly confused with common law malice, actual malice "has nothing to do with bad motive or ill will." <u>Harte-Hanks Commc'ns, Inc. v. Connaughton</u>, 491 U.S. 657, 666 n.7 (1989). One court explained the distinction as follows:

> In the context of a libel suit, "actual malice" simply does not mean ill-will or spite. Rather, "malice" must be taken to mean fraudulent, knowing, publication of a falsehood, or reckless disregard of falsity. And we also note that reckless does not mean grossly negligent, its common use, but rather intentional disregard. When the Supreme Court uses a word, it means what the Court wants it to mean. "Actual malice" is now a term of art having nothing to do with actual malice.

<u>Reliance Ins. Co. v. Barron's</u>, 442 F. Supp. 1341, 1349-50 (S.D.N.Y. 1977); see also <u>Reuber v. Food Chem. News, Inc.</u>, 925 F.2d 703, 715 (4th Cir. 1991) ("Even if Cooper harbored ill will towards Reuber, and there is no evidence of that, the Supreme Court consistently has held that 'the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term.'"); <u>Church of Scientology Int'l v. Daniels</u>, 992 F.2d 1329, 1335 (4th Cir. 1993); <u>Jackson v. Hartig</u>, 274 Va. 219, 231 (2007).

    B.    <u>Recklessness Does Not Mean Gross Negligence</u>

Plaintiffs frequently argue that recklessness in a defamation case should include gross negligence or other objective measures of conduct. The law is clear, however, that for purposes of proving actual malice, reckless conduct does not mean gross negligence, an extreme departure from accepted standards, or any other objective measure of a defendant's conduct. The fact that a reporter could have or should have uncovered additional facts has nothing to do with whether

4

the reporter believed what he was saying and does not amount to a "reckless disregard for the truth" unless the reporter had "obvious reasons" to doubt the veracity of his statements.

The United States Supreme Court explained this crucial distinction in reversing a defamation verdict in St. Amant v. Thompson, 390 U.S. 727, 731 (1968), where the defendant had relied on a single source, whose reputation was unknown, without verifying the information:

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, *or would have investigated before publishing.* There must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

Id. at 731-32 (emphasis added); see also Gertz v. Robert Welch, Inc., 418 U.S. 323, 332 (1974) ("[M]ere proof of a failure to investigate, without more, cannot establish reckless disregard for the truth.").

The Fourth Circuit has frequently applied St. Amant to reject the argument that a failure to investigate or to confirm demonstrates recklessness. In Ryan v. Brooks, 634 F.2d 726 (4th Cir. 1980), for example, the court analyzed St. Amant at length in holding that proof of a failure to investigate and confirm did not establish actual malice as a matter of law:

> In St. Amant v. Thompson, 390 U.S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968), the Court stressed the stringent evidentiary standard necessary to prove reckless conduct. In that case Thompson, a deputy sheriff, sued St. Amant, a candidate for public office, for defamation of the sheriff in a televised speech, in which St. Amant had quoted another person's statement that Thompson had taken bribes. The Louisiana Supreme Court had upheld the jury verdict for the plaintiff, finding sufficient evidence of reckless conduct under the New York Times standard. The record revealed that St. Amant had no personal knowledge of Thompson's activities, but relied solely on a source whose reputation he did not know; and he had failed to verify the information with those who might have known the facts. Nevertheless, the United States Supreme Court reversed, holding that these facts failed to prove St. Amant's reckless disregard for the accuracy of his statements. After reviewing the Court's previous decisions in the area of libel, Justice White wrote for the Court:
>
> These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before

5

> publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.
>
> 390 U.S. at 731, 88 S. Ct. at 1325. Justice White then noted some examples of reckless conduct that would indicate bad faith publication and negate the New York Times privilege. They included publication of a completely fabricated story, or of one based entirely on an unverified anonymous telephone call; or publication where there are obvious reasons to doubt the veracity of the informant. Id. at 732, 88 S. Ct. at 1326. St. Amant's mere failure to investigate, however, did not prove bad faith since there was no evidence that he was aware of the probable falsity of the statements about Thompson. Id. at 732-33, 88 S. Ct. at 1326.

Id., 634 F.2d at 732. Recognizing that actual malice "contemplate[s] much more than a failure to exercise ordinary care in verifying statements about public officials," id., the Court found insufficient evidence of actual malice even though "better journalistic practice" would have called for additional confirmation and the defendant had plenty of time to investigate further:

> Clearly it would have been better journalistic practice to have verified the accuracy of these secondary sources by reading the original account in the *Charlotte Observer*. But we cannot say that the failure to do so amounted to more than mere negligence. We recognize that the book was not "hot news," and a more thorough investigation should be expected in these circumstances than in the preparation of a news story under deadline pressure. Nevertheless, the sentence was such a small part of the whole work that the author might understandably feel three sources to be sufficient. Certainly where there was no reason to doubt the accuracy of the sources used, the failure to investigate further, even if time was available, cannot amount to reckless conduct.

Id. at 733.

In Hatfill v. New York Times Co., 532 F.3d 312 (4th Cir. 2008), the Fourth Circuit affirmed the dismissal of a defamation case on summary judgment, again finding insufficient evidence of actual malice. The plaintiff in Hatfill based his claim on a series of columns suggesting he might have mailed anthrax-laced packages to various government offices shortly after 9/11. Despite the fact the reporter did not know who was responsible and clearly suggested it could have been the plaintiff, the court affirmed the dismissal based on the plaintiff's inability

6

to present clear and convincing evidence of actual malice. In reaching its decision, the court emphasized the subjective nature of the inquiry and that failing to investigate or confirm does not establish recklessness, stating, "[u]nder this standard, it is not enough for a plaintiff to prove simply that the defendant failed to investigate or to check the accuracy of a false statement. Gertz, 418 U.S. at 332, 334-35 n.6. The standard requires that the defendant have a 'subjective awareness of probable falsity' of the publication." Id. at 317. Citing St. Amant, the court also confirmed the extremely limited circumstances in which clear and convincing proof of actual malice exists, noting, "[c]onstitutional malice requires 'much more than a failure to exercise ordinary care' — it demands evidence of the 'publication of a *completely* fabricated story, or of one based entirely on an unverified anonymous telephone call; or publication where there are obvious reasons to doubt the veracity of the informant.'" Id. at 325 (emphasis in original).

The Fourth Circuit similarly affirmed a summary judgment on actual malice grounds in Carr v. Forbes, Inc., 259 F.3d 273 (4th Cir. 2001), a defamation action based on an article that appeared in *Forbes* magazine, stating:

> Carr essentially complains that Forbes should have investigated further before it published "Moonshine Bonds." According to Carr, "accepted standards of journalism" require this. Carr contends that, if these standards had been followed, Forbes would have learned that the article was altogether false. This may be true. However, "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." St. Amant v. Thompson, 390 U.S. 727, 731 (1968)." There must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication." Id. (emphasis in original).

Id. at 283. Despite acknowledging the lack of proof to justify the statements in the article, the Court affirmed the dismissal, noting the important balancing embodied in the actual malice standard and the need to protect free speech in a democracy:

> The Forbes article may contain false or misleading statements about Carr. The record before us certainly does not prove that Carr is a con-man or a criminal who enriched himself by defrauding bondholders in public-private partnership deals.

7

I-1469423.1

> He well may be an honest businessman who made some mistakes that those seeking to destroy his projects exploited. However, the First Amendment does not require perfection from the news media. Were the press subject to suit every time it erred, it would decline to speak out without resorting to the sort of cumbersome due diligence common in security offerings. For this reason, the Constitution provides the press with a shield whereby it may be wrong when commenting on acts of a public figure, as long as it is not intentionally or recklessly so.

Id.

In Reuber v. Food Chemical News, Inc., 925 F.2d 703 (4th Cir. 1991), the Fourth Circuit reversed a defamation verdict and entered judgment for the defendant based on the lack of actual malice. In Reuber, a publication focusing on the chemical industry reported on an internal reprimand letter that criticized a scientist. Despite the fact that the source for the letter had an interest in making the scientist look bad, the publication had a profit motive, and the reporter *consciously decided not to inquire about the accuracy of the claims* in the letter, the Fourth Circuit held that the plaintiff had failed to prove actual malice by clear and convincing evidence:

> Moreover, it is hardly unusual for publications to print matter that will please their subscribers; many publications set out to portray a particular viewpoint or even to advance a partisan cause. Defamation judgments do not exist to police their objectivity; the First Amendment presupposes that a veritable medley of opposing voices is better suited to the search for truth. See, e.g., New York Times v. Sullivan, 376 U.S. at 270, 84 S. Ct. at 720 (citing United States v. Associated Press, 52 F. Supp. 362, 372 (S.D. N.Y. 1943)).
>
> Reuber also contends that Cooper's attitude toward the accuracy of the allegations contained in the reprimand letter reveals her reckless disregard of the truth. For example, the trial court observed that Cooper testified that she made a conscious decision not to inquire into the truth or falsity of Hanna's allegations in the letter. Even if Cooper made such a decision, that decision does not prove actual malice under these circumstances. In St. Amant v. Thompson, 390 U.S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968), a lower court listed as part of its rationale for finding actual malice that a political candidate had no personal knowledge of the activities of the public official he allegedly defamed during a television broadcast. Id. at 730, 88 S. Ct. at 1325. Instead, the candidate relied solely on the affidavit of a union member whose reputation for veracity the candidate did not know. In addition, he failed to verify the information with those in the union office who might have known the facts. Id. The Supreme Court held that this evidence, evidence remarkably similar to that relied on by the trial court in the present case, did not prove reckless disregard. Id. The Court noted that no evidence existed

8

> indicating that the candidate was aware of the probable falsity of the union member's statements or had reason to doubt his source's veracity. "Failure to investigate," the Court emphasized, "does not in itself establish bad faith." Id. at 733, 88 S. Ct. at 1326.

Id. at 716. In reversing the lower court, the Fourth Circuit held that the trial court had erred by giving the jury an instruction that confused the subjective actual malice standard with an objective standard based on journalism norms. See id. at 711-12 (noting the trial court's error in basing an instruction on "the professional standards rule," and determining that reversal was necessary solely on the basis that the jury might have "rested its finding of actual malice on the impermissible ground of a departure from accepted standards").

In Church of Scientology International v. Daniels, 992 F.2d 1329 (4th Cir. 1993), the court applied the same principles in affirming summary judgment in an actual malice case involving statements about the Church of Scientology. Again, the court rejected the argument that defamation liability could be based on ordinary concepts of recklessness:

> "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant, 390 U.S. at 731, 88 S. Ct. at 1325-26 (1968). In Reuber v. Food Chemical News, Inc., 925 F.2d 703 (4th Cir. 1991) (en banc), we thoroughly discussed the standard of reckless disregard for the truth, and stressed the Harte-Hanks requirement that the plaintiff must show that the defendant acted with a high degree of awareness of probable falsity. Reuber made it clear that actual malice cannot be established merely by showing a departure from accepted journalistic or professional practices. The case emphasized that the failure to investigate, "where there was no reason to doubt the accuracy of the sources used . . . cannot amount to reckless conduct." Id. at 716.

Id. at 1334.

The Supreme Court of Virginia likewise has repeatedly held that a failure to investigate or confirm does not establish actual malice where the reporter did not have "obvious reasons" to doubt the veracity of the report. For example, in Jackson v. Hartig, 274 Va. 219 (2007), the

9

court affirmed summary judgment in favor of a newspaper on a defamation claim brought by a public figure. The plaintiff in Jackson had lost an election to City Council and alleged that, prior to the election, the newspaper had printed a false editorial that asserted that the plaintiff had resigned from the school board amid a budget scandal. It was uncontroverted that, rather than resign, the plaintiff faced criminal charges and prevailed after a jury trial. The plaintiff also alleged that the editor made a comment to the effect that Jackson would have to "pay" for his role in allowing the Virginia Beach School Board to run deficits while Jackson was a member. Id. at 231. Jackson also submitted evidence suggesting that a thorough investigation would have revealed that the publisher's statement was false and that the very same newspaper had previously published stories that directly contradicted the editorial. Id. at 229. Despite this evidence, the Supreme Court of Virginia affirmed the summary judgment:

> Furthermore, a media defendant in a defamation claim subject to the New York Times standard cannot be said to have acted with actual malice on account of its failure to investigate the accuracy of an allegedly defamatory statement before publishing it unless the defendant first "had a high degree of awareness of [its] probable falsity." Shenandoah Publ'g House, Inc. v. Gunter, 245 Va. 320, 324, 427 S.E.2d 370, 372 (1993); see also St. Amant v. Thompson, 390 U.S. 727, 731 (1968) ("[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."). Thus, in the context of the actual malice inquiry, a duty to investigate the accuracy of one's statements does not arise until the publisher of those statements has a high degree of subjective awareness of their probable falsity. See Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989) (citing Garrison v. Louisiana, 379 U.S. 64, 74 (1964)).

Id. at 229-30. Looking at the totality of the evidence, the court found no "fact that would permit a reasonable fact finder to conclude that the defendants published [the statements in issue] either with actual knowledge of falsity or subjective serious doubts as to truth . . . ." Id. at 232; see also Jordan v. Kollman, 269 Va. 569, 580-81 (2005) (reversing a defamation verdict and entering judgment where there was insufficient evidence that the plaintiff "fabricated" false

10

advertisements, that the advertisements were the "product of his imagination" or that there were obvious reasons to doubt the veracity of the information in the advertisments); Shenandoah Publ'g House, Inc. v. Gunter, 245 Va. 320, 324 (1993) ("A 'reckless disregard' for the truth . . . requires more than a departure from reasonably prudent conduct." ... Instead, the evidence must establish that the defendant had a high degree of awareness of probable falsity. Unless the defendant had such an awareness, its failure to investigate before publishing is not sufficient to establish a reckless disregard for the truth.") (citations omitted). Courts throughout the country have rejected similar arguments based on alleged "willful blindness."[1]

---

[1] See, e.g., Don King Prods., Inc. v. Walt Disney Co., 40 So. 3d 40 (Fla. Dist. Ct. App. 2010) (affirming summary judgment despite the fact that plaintiff offered evidence of ill will and a failure to investigate); OAO Alfa Bank v. Ctr. for Public Integrity, 387 F. Supp. 2d 20 (D.D.C. 2005) ("Hence, the standard of actual malice is not satisfied even by proof of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers."); Chafoulias v. Peterson, 668 N.W.2d 642, 655 (Minn. 2003) (affirming summary judgment in favor of a media defendant despite the plaintiff's evidence that the defendant's report was slanted against him and that the defendant did not adequately investigate the credibility of an attorney whose false statement the defendant aired in its program); Perk v. Reader's Digest Ass'n, Inc., 931 F. 2d 408, 412 (6th Cir. 1991) ("After an independent examination of the record, therefore, this Court concludes that the District Court's holding that Perk could not prove reckless disregard was correct. Although the article portrays the appellant in a negative manner, appellees have no legal obligation to present a balanced view of what led up to Cleveland's default. Nor are they liable for failing to perform the thorough professional investigation Perk would have preferred. The appellant has not presented sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."); Buendorf v. Nat'l Pub. Radio, Inc., 822 F. Supp. 6 (D.D.C. 1993) ("In spite of plaintiff's misinterpretation of New York Times Co. v. Sullivan, the rule is clear: failure to investigate thoroughly before publication, does not rise to the level of reckless disregard."); Fletcher v. San Jose Mercury News, 216 Cal. App. 3d 172, 189 (1989) ("In sum, we conclude the evidence of actual malice is neither clear nor convincing. Perhaps Herhold did not like Fletcher. After hearing Fulcher's comments, this opinion is hardly surprising. And perhaps the Mercury News articles were less than objective. Clearly the articles contained factual errors. But was there clear and convincing evidence that Herhold did not believe his story was true? We do not think so."); Saenz v. Playboy Enters., Inc., 653 F. Supp. 552, 572 (N.D. Ill. 1987) ("[F]or the purposes of constitutional malice, Playboy's editors were under no obligation to check Morris's facts at all, unless something blatant put them on notice that he was reckless about the truth."), aff'd, 841 F.2d 1309 (7th Cir. 1988); Tavoulareas v. Piro, 817 F.2d 762 (D.C. Cir. 1987) (affirming the district court's entry of judgment notwithstanding

11

## II. Actual Malice Requires Clear and Convincing Proof that the Court Must Review Independently

The actual malice standard, which requires proof by clear and convincing evidence, imposes an extraordinarily high burden on a defamation plaintiff. See, e.g., CACI Premier Tech., Inc. v. Rhodes, 536 F.3d 280, 293 (4th Cir. 2008) ("As we have said, '[e]stablishing actual malice is no easy task, because the defamation plaintiff bears the burden of proof by clear and convincing evidence.'"); Church of Scientology Int'l v. Daniels, 992 F.2d 1329, 1334 (4th Cir. 1993) ("However, a public figure plaintiff faces a significant burden in proving actual malice. The Supreme Court has made it clear that a 'defendant must have made the false publication with a high degree of awareness of . . . probable falsity.'").

Given this high burden and the important interests at stake, "granting of summary judgment is especially appropriate in libel cases, for prolonging a meritless case through trial could result in further chilling of First Amendment rights." Anderson v. Stanco Sports Library, Inc., 542 F.2d 638, 641 (4th Cir. 1976). Moreover, in any case that proceeds to trial, both the trial court and the appellate court must independently review a plaintiff's evidence to ensure that it satisfies the stringent test for clear and convincing proof of actual malice. See Ryan v. Brooks, 634 F.2d 726, 735 (4th Cir. 1980). In making this review, the court must depart "from the considerable deference an appellate court normally accords to a fact-finder's determinations." Reuber v. Food Chem. News, Inc., 925 F.2d 703, 714 (4th Cir. 1991). As the Fourth Circuit has explained, "[b]oth the independent review requirement and the heightened evidentiary standard

---

the verdict despite the plaintiff's evidence that the publisher relied on a single source who harbored personal animus toward the plaintiff); Murray v. Bailey, 613 F. Supp. 1276, 1280 (N.D. Cal. 1985) ("A publisher's failure to make an independent investigation of a story, even when the publisher is aware of the possible bias of its source, does not amount to reckless disregard in the absence of serious doubts about the story's truthfulness."); Doubleday & Co. v. Rogers, 674 S.W.2d 751, 756 (Tex. 1984) ("[P]roof of an utter failure to investigate amounted to no evidence of malice.").

12

reflect the importance associated with defamation judgments. This importance stems from the crippling effect the casual award of defamation damages can have upon the freedom of the press and, indeed, upon the 'free exchange of ideas' generally." Id. at 715 (citing Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657 (1989)).

### III. Plaintiff's Claimed Evidence of Actual Malice

As part of discovery in this case, WTVR propounded interrogatories on Plaintiff that asked Plaintiff to identify (1) all statements in the broadcast she alleged to be false; and (2) all evidence that Plaintiff contended "establishes or tends to establish that the Defendant acted negligently in publishing the statement and/or possessed any doubt as to the truth of the statement at the time of publication." Plaintiff's responses to these interrogatories (numbers seven and eight) are attached, collectively as **Exhibit 1**.

In response to interrogatory number 8, Plaintiff identified five things she claims will establish either negligence or actual malice:

> (i) "[T]he fact that no one from WTVR contacted Plaintiff to investigate whether she had fully disclosed her prior felony conviction prior to beginning her employment at the Prince George County School System;"
>
> (ii) "WTVR's reliance on an unnamed source as the impetus for its new story and its false assertion that as of the date of the news story Horne had already been fired;"
>
> (iii) "WTVR's incorrect belief that Horne might have had a criminal conviction in Tennessee;"
>
> (iv) "WTVR's intentional creation of the narrative of the news story to indicate that the employee at issue in the story (Horne) had failed to disclose her prior felony conviction to the School System;" and
>
> (v) "WTVR's failure to confirm from Dr. Browder, Horne, or anyone else whether or not (a) Horne had been fired by the date of the news story (b) Horne had properly disclosed her felony conviction prior to being hired by the School System; and (c) Horne had made any misrepresentations about her felony status when she applied for work at the School System."

13

None of this proffered evidence can support a verdict based on the subjective actual malice standard. For example, Plaintiff complains about "WTVR's reliance on an unnamed source as the impetus for its news story and its false assertion that as of the date of the news story Horne had already been fired." As this Court has previously ruled, the only information provided by the unnamed source was the fact that a felon had been hired and fired, which is undisputed. The date of Horne's firing is similarly irrelevant, has nothing to do with the reporter's subjective belief, and is contradicted by Plaintiff's own Complaint. The same is true of Plaintiff's reliance on whether WTVR incorrectly believed that Plaintiff might have been convicted in Tennessee, which was not even reported. The broadcast did not identify Plaintiff's conviction or where it occurred. Indeed, WTVR did not specifically name Plaintiff, describe her conviction, or discuss the possible Tennessee connection precisely because it was not sure of the details. Rather than establish actual malice, this evidence negates it.

The fourth piece of "evidence," which Plaintiff characterizes as "WTVR's intentional creation of the narrative," is not evidence at all, but rather the Plaintiff's conclusion about the evidence. It does not address the reporter's subjective state of mind and begs the question by assuming that the reporter knew all of the relevant facts, and intentionally prepared the broadcast to create a knowingly false and defamatory inference. The reporter could not have intentionally created a false inference if he did not first have a high degree of awareness of probable falsity.

The remaining two descriptions offered by Plaintiff are actually one and the same. Plaintiff complains that the reporter did not confirm his story with Plaintiff or anyone else at the school system. As noted above, however, a failure to investigate or to confirm is not reckless conduct or actual malice as a matter of law. Unless Plaintiff can prove that the reporter actually had reasons to doubt the veracity of his story, she cannot recover.

14

## Conclusion

WTVR anticipates that, after receiving this brief, Plaintiff will attempt to characterize the evidence as some form of "willful blindness" to avoid the established principle that a failure to investigate or confirm is not actual malice as a matter of law. Willful blindness or any other similar label attached by Plaintiff cannot change the underlying law. In order to establish actual malice, Plaintiff must prove by clear and convincing evidence that the reporter actually either knew that the report was false or actually entertained serious doubts as to its truthfulness. Here, however, Plaintiff can point to no facts or information known to the reporter that would have raised doubts about the story nor identify anything that would have given the reporter "obvious reasons" to doubt Dr. Browder's statements.

Dated: March 31, 2017                    Respectfully submitted,

/s/
_____
Brett A. Spain (VSB No. 44567)
Conrad M. Shumadine (VSB No. 4325)
Counsel for WTVR, LLC, d/b/a CBS 6
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
(757) 628-5500 Telephone
(757) 628-5569 Facsimile
bspain@wilsav.com
cshumadine@wilsav.com

I-1469423.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

    Richard F. Hawkins, III (VSB No. 40666)
    Counsel for Plaintiff
    The Hawkins Law Firm, PC
    2222 Monument Avenue
    Richmond, Virginia 23220
    (804) 308-3040 Telephone
    (804) 308-3113 Facsimile
    rhawkins@thehawkinslawfirm.net

    /s/
    Brett A. Spain (VSB No. 44567)
    Conrad M. Shumadine (VSB No. 4325)
    Counsel for WTVR, LLC, d/b/a CBS 6
    WILLCOX & SAVAGE, P.C.
    440 Monticello Avenue, Suite 2200
    Norfolk, Virginia 23510
    (757) 628-5500 Telephone
    (757) 628-5569 Facsimile
    bspain@wilsav.com
    cshumadine@wilsav.com

16

I-1469423.1