IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANGELA ENGLE HORNE,
        Plaintiff,

v.                                               Civil Action No. 3:16-cv-000092- JAG

WTVR, LLC, d/b/a CBS6,
        Defendant.

## OPINION

The Prince George County School System (the "School System") hired, and then fired, Angela Engle Horne, a convicted felon, as its Director of Budget and Finance. A local television station, WTVR, LLC, doing business as CBS 6 ("WTVR"), aired a segment about the "Felon Hired, Then Fired." The segment did not provide details on the specific employment situation, but it did review the hiring process, including the fact that making a false representation about prior criminal convictions on an application is a criminal offense. In reality, the School System hired Horne after she disclosed her prior criminal conviction on her application, and then fired her when it realized that hiring her had violated state law. Horne has sued WTVR for defamation, alleging that the segment it broadcast defamed her by implying that Horne had committed a crime by lying on her application. WTVR has moved for summary judgment. Because the segment is reasonably capable of the alleged defamatory meaning, and because disputes of fact exist as to WTVR's intent when it published the segment, the Court will deny the motion for summary judgment, and the case will proceed to trial.

## I. BACKGROUND

In July 2014, Horne completed an online application for the position of Director of Budget and Finance for the School System. On the application, Horne disclosed a prior felony conviction. The School System hired Horne for the position. She started in September 2014.

The Director of Budget and Finance (the "Director") is responsible for managing the financial, budgetary, and purchasing affairs of the School System. The Director reports to the Assistant Superintendent for Administration and Personnel, and supervises the Accounting Associate. The position description includes nineteen responsibilities, which involve planning, directing, coordinating, managing, tracking, overseeing, and analyzing. Most of the responsibilities focus on the internal logistics, such as accounting, reports, audits, and benefits. Additionally, the Director "[m]ust be available to attend regular school board meetings and be comfortable presenting to the school board." (Mem. Supp. Mot. Summ. J. Ex. 2.) According to Horne, she only spoke at a meeting once.

In January 2015, the Prince George County School Board (the "School Board") received an anonymous letter that, in relevant part, asked why the School Board had hired Horne despite her prior conviction. The School Board directed the Superintendent for the School System, Bobby Browder, to consult a lawyer about the issue. The lawyer advised Browder that Horne's hiring was illegal under Virginia law. On February 10, 2015, Browder asked Horne to resign. Horne refused, so Browder fired her.

WTVR is a television station that broadcasts in the Metro-Richmond area. At some point prior to February 13, 2015, Wayne Covil, a reporter for WTVR, received a tip that the School System had hired a convicted felon. Mid-morning on February 13, 2015, Covil received an anonymous email with the same information. Covil directed another WTVR employee to look

into Horne as the potential felon. The employee found a possible phone number for Horne, and Covil left a message at this number. Covil also contacted Browder, who said that he could not discuss specific details on the individual whom the School System had hired and fired, but could discuss the hiring process in general. Later that day, Covil interviewed Browder about the hiring process.

That evening, at the top of the 5:30 p.m. broadcast, WTVR aired a segment titled "Hired and Then Fired." The "teaser" said: "A CBS 6 viewer reached out to us concerned about a felon working for a local school system." One of the anchors then introduced the segment: "Getting a job with a felony conviction is perfectly legal in Virginia, unless you want to work in a school. That's not allowed. CBS 6 Senior Reporter Wayne Covil is working for you. He spoke to the School System about how they keep this from happening."

The camera then turned to Covil, who began: "Sources tell us the person who was hired to work in the School Board Office is no longer employed. While the School Superintendent cannot legally talk about personnel matters, he did talk to me about the hiring practice, and it starts with this book—Virginia School Law." The segment then explained the hiring process, using clips from the interview with Browder, voice-overs from Covil, and related images and video clips. Throughout the segment, the banner at the bottom of the screen read: "Felon Hired, Then Fired: How Prince George Schools Prevents This."

The segment explained that the hiring process starts with an online application, which includes a question that asks specifically about crimes. If an applicant lists a prior crime, the School System asks for further details. Once the School System selects the final applicant, it then starts the finger printing and background check process. This process, however, could take from four to six weeks, and the new hire sometimes starts before the School System receives the

results of the background check. Browder explained that state law prohibits people with felony convictions and people with misdemeanor convictions for crimes toward children from working for the School System. The segment ended with the following statement: "Virginia state law is also specific when it comes to filling out an application for a school system. It is a Class 1 misdemeanor to make false representations when it comes to revealing criminal convictions."

Virginia law does mandate that school board applications must require the applicant to certify that the applicant has not been convicted of certain crimes. Va. Code Ann. § 22.1-296.1(A). As interpreted by the Supreme Court of Virginia, "[a] felon cannot make such a certification." *Butler v. Fairfax Cty. Sch. Bd.*, 291 Va. 32, 37, 780 S.E.2d 277, 280 (2015). The same statute makes it a misdemeanor for a person to make a "materially false statement regarding any such offense." *Id.*

## II. DISCUSSION[1]

Horne has sued WTVR for defamation, arguing that the segment implied that she hid her prior conviction when she submitted her application and that, in doing so, she committed a crime. To state a claim for defamation in Virginia, the plaintiff must allege that the defendant published an actionable statement about the plaintiff with the requisite intent. *Schaecher v. Bouffault*, 290 Va. 83, 91, 99, 772 S.E.2d 589, 594, 598 (2015). To be actionable, the statement must be both false and defamatory, and, depending on the statement, must result in actual damages. *Id.*; *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954).

---

[1] WTVR moves for summary judgment. Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S 317, 322 (1986).

WTVR has moved for summary judgment, claiming that Horne cannot establish that the segment was defamatory or that WTVR acted with the requisite intent. WTVR also raises the fair comment and fair report privilege as a defense to Horne's claim.

### A. Defamatory

Defamatory words are those that damage a plaintiff's reputation in the community or that deter others from associating or dealing with her. *Schaecher*, 290 Va. at 91–92, 772 S.E.2d at 594. For example, statements that falsely assert that a person committed a crime of moral turpitude are defamatory. *Carwile*, 196 Va. at 7, 82 S.E.2d at 591.

A statement can qualify as defamatory whether made directly (i.e., on the face of the statement) or by implication. *Carwile*, 196 Va. at 7, 82 S.E.2d at 591–92. When a plaintiff alleges that a statement is defamatory by implication, the court must determine whether "the words ascribed to the defendants, given their plain meaning, are reasonably capable of conveying the defamatory innuendo of which the plaintiff complains." *Pendleton v. Newsome*, 290 Va. 162, 175, 772 S.E.2d 759, 765 (2015). If a statement is reasonably capable of the defamatory meaning alleged, then it goes to the fact finder to decide whether the statement was actually defamatory. *Perk v. Vector Res. Grp., Ltd.*, 253 Va. 310, 316–17, 485 S.E.2d 140, 144 (1997).

In making its evaluation, a court must accept reasonable inferences in the plaintiff's favor, but must resist using innuendo to extend the meaning of defamatory language beyond its ordinary meaning. *Webb*, 287 Va. 84, 89, 752 S.E.2d 808, 811 (2014) (citing *Carwile*, 196 Va. at 8, 82 S.E.2d at 592). Additionally, context matters. "[A]llegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used." *Carwile*, 196 Va. at 7, 82 S.E.2d at 591–92. For example, in *Carwile v. Richmond Newspapers*,

an attorney charged the local police department with corruption, but after investigation, a grand jury did not return indictments. *Id.* at 3, 82 S.E.2d at 589. The newspaper reported the story, and included the fact that city officials did not answer a question about whether they would recommend the attorney to the State Bar for his conduct in leveling the charges. *Id.* The story then explained that the State Bar may request disbarment of an attorney for ethical violations. *Id.*, 82 S.E.2d at 589–90. *Carwile* held

> [I]t is a reasonable implication of this language, read in connection with the whole article, that the plaintiff is guilty of unethical and unprofessional conduct for his charges made against the Police Department; for which conduct the defendant suggests in a veiled but pointed way that the plaintiff could and should be subjected to disbarment proceedings.

*Id.* at 9, 82 S.E.2d at 592. In so holding, the Supreme Court of Virginia noted that the article did not charge the plaintiff with a breach of ethics in express terms, but, when "aided by innuendo, operating within the scope of its legitimate function," the article did impute conduct that damaged the plaintiff's reputation. *Id.*

In this case, the WTVR segment is reasonably capable of the defamatory meaning alleged by Horne. The segment began with the report that the School System had hired, and then fired, a convicted felon. Covil explained that Browder could not discuss personnel matters, so WTVR would instead explain the hiring process. Nevertheless, throughout the segment, the banner at the bottom of the screen read "Felon Hired, Then Fired." The segment ended with the fact that it is a crime to make false representation about criminal convictions when filling out an application. Taken in context, including both the words spoken and the images displayed, the segment is reasonably capable of conveying that the School System fired the "Felon" because she lied about her conviction when filing out her application. Like the article in *Carwile*, the segment gives rise to this implication despite the fact that Browder would not discuss the specific

6

situation. Through its presentation, WTVR "suggests in a veiled but pointed way" why the School System fired Horne, and that Horne committed a crime when she filled out her application. Because the segment is reasonably capable of the alleged defamatory meaning, the jury must decide whether the statement was actually defamatory.

### B. Requisite Intent

The level of intent a plaintiff must prove to succeed on a defamation claim depends on the status of the plaintiff, namely whether she is a private or public person. If the plaintiff is a public person, to protect competing First Amendment freedoms, the plaintiff must prove that the defendant published the allegedly defamatory statement with "actual malice." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). The Supreme Court has outlined two categories of public persons that warrant this heightened standard for intent: public officials and public figures. Courts must decide as a matter of law[2] whether a plaintiff qualifies as a public official or public figure. *Carr v. Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001). The analysis begins with the presumption that the plaintiff is a private individual, subject to the defendant's burden of proving that the plaintiff is a public official or public figure. *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1553 (4th Cir. 1994).

Public officials are government employees that "have, or appear to the public to have, substantial responsibility for or control over the conduct of government affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). In other words, the plaintiff can qualify as a public official based on either her actual or apparent authority over governmental affairs. A position is more likely to convey such authority if the responsibilities include participating in policy determinations, making recommendations, or exercising discretion. *Arctic Co. v. Loudon Times Mirror*, 624

---

[2] Federal constitutional law governs this determination, not state law. *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 284, 362 S.E.2d 32, 35 (1987).

7

F.2d 518, 521–22 (4th Cir. 1980). The Supreme Court based its description of the "public official" on the "strong interest in debate on public issues," and the "strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues." *Rosenblatt*, 383 U.S. at 85. This public official status applies where "a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees." *Id.* at 86.

Here, WTVR has met its burden in proving that Horne was a public official as Director of Budget and Finance for the School System because the position, at the very least, appears to have substantial responsibility for the conduct of governmental affairs. Horne focuses on her actual authority as Director, arguing that she did not have any discretion over the budget.[3] This argument misses the point that, regardless of what the position actually entailed, the Director of Budget and Finance for the School System would appear to the public to have substantial responsibility for the School System's budget. The budget of a local school system certainly qualifies as a public issue over which the Director appears to hold a position of significant influence. Accordingly, the Court finds that Horne was a public official at the time WTVR broadcast the segment at issue.[4]

---

[3] In her opposition, Horne also argues that the alleged defamatory statements do not relate to her official conduct as Director. The Supreme Court, however, has held that "official conduct" includes "anything which might touch on an official's fitness for office." *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964). Honesty on an application, as well as prior criminal convictions, certainly would touch on an official's fitness for office.

[4] Because the Court finds that Horne was a public official at the time of the publication, it need not decide whether she was a limited-purpose public figure.

Because Horne was a public official at the time of the publication, she must prove that WTVR acted with actual malice.[5] The term "actual malice" in this context means "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. at 279–80. In turn, "reckless disregard" requires "subjective awareness of the probable falsity" of the statement. *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 317 (4th Cir. 2008) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974)). A plaintiff may prove the defendant's state of mind through circumstantial evidence. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989).

The Court finds that a genuine dispute of material fact exists as to whether WTVR acted with actual malice when it published the segment. Further, the Fourth Circuit has cautioned that a court should employ summary judgment carefully when addressing a party's subjective state of mind. *Eramo v. Rolling Stone, LLC*, __ F. Supp. 3d __, No. 3:15-CV-00023, 2016 WL 5234688, at *7 (W.D. Va. Sept. 22, 2016), *reconsideration granted on other grounds*, 2016 WL 5942328 (W.D. Va. Oct. 11, 2016) (citing cases). Accordingly, the Court will leave the issue of WTVR's intent to the jury.

### C. Fair Report Privilege[6]

The fair report privilege, recognized by most jurisdictions, protects "press reports of official actions or proceedings, so long as the report was accurate and either complete or fairly abridged." *Chapin v. Knight-Ridder, Inc.*, 993 F.3d 1087, 1097 (4th Cir. 1993). In the relevant

---

[5] "Actual malice," as described in *New York Times v. Sullivan*, differs from common law malice. *Lipscomb*, 234 Va. at 284, 362 S.E.2d at 35.

[6] WTVR also asserts the fair comment privilege, which deals more with opinions. *See Tomblin v. WCHS-TV8*, 434 F. App'x 205, 220 n.8 (4th Cir. 2011) (Davis, J., dissenting) (discussing the difference between the fair comment privilege and the fair report privilege under West Virginia law). This privilege does not apply to this case, as WTVR did not offer an opinion on the situation.

9

jurisdictions, the Supreme Court of Virginia has not addressed this privilege for half a century,[7] and the Fourth Circuit has recognized a fair report privilege in certain situations, seemingly based on constitutional considerations.[8] Regardless of the legal basis for the fair report privilege that WTVR raises, any such privilege at least requires that the report be fair and accurate.

In this case, WTVR cannot claim the fair report privilege because it did more than simply report what Browder, as the Superintendent for the School System, said about the hiring process. In the segment, WTVR juxtaposed what Browder said with its report that the School System had hired, and then fired, a convicted felon, and with the "Felon Hired, Then Fired" banner displaying throughout the story. Accordingly, WTVR cannot rely on the fair report privilege in this case.

### III. CONCLUSION

In summary, the Court finds that Horne was a public figure at the time WTVR aired the segment at issue, so Horne must prove that WTVR broadcast the segment with actual malice. The Court, however, will leave this subjective inquiry to the jury. Further, the segment is reasonably capable of the alleged defamatory meaning, so the Court will leave for the jury the decision of whether the segment actually defamed Horne. In its defense, WTVR cannot rely on the fair report privilege.

---

[7] *Alexandria Gazette Corp. v. West*, 198 Va. 154, 159, 93 S.E.2d 274, 279 (1956) ("The publication of public records to which everyone has a right of access is privileged, if the publication is a fair and substantially correct statement of the transcript of the record.").

[8] *Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4th Cir. 1988); *see also Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991) ("While the sources of the fair report privilege are in some dispute, several circuits have recognized that a privilege which goes to the heart of news organizations' ability to report to citizens about their government is one with constitutional implications.").

The Court entered a corresponding Order on March 8, 2017.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: __4/6__, 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

11